IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

MARC KEATING,

        Plaintiff,                               CIVIL ACTION

        v.                                     NO. 11-411

PITTSTON CITY, et. al.,

        Defendants.

**OPINION**

**Slomsky, J.**                                                                               **April 14, 2011**

**I.    INTRODUCTION**

On March 3, 2011, Plaintiff Marc Keating filed this *pro se* civil rights action against Defendants Pittston City, Officer Tokar, and Officer Hussein. (Doc. No. 1.) Plaintiff is currently incarcerated at the Lackawanna County Prison in Scranton, Pennsylvania. The allegations in the Complaint are unrelated to his conditions of confinement. Plaintiff alleges in the Complaint constitutional claims arising from a confrontation with named Defendants, which occurred in October 2009 when Plaintiff was on state parole.

Before the Court are two Motions filed by Plaintiff to Proceed in *Forma Pauperis* (Doc. Nos. 2, 7). When a prisoner files a motion to proceed *informa pauperis* ("IFP"), the Prison Litigation Reform Act of 1995[1] (the "PLRA") requires a court to screen the Complaint to determine whether the complaint is frivolous, malicious, or fails to state a claim on which relief may be granted. 28 U.S.C. § 1915(e)(2); see also Roman v. Jeffes, 904 F.2d 192, 195-96 (3d Cir. 1990). If the court determines that the Complaint fails to state a claim, then, "[n]otwithstanding

---

[1] Pub. L. No. 104-134, 110 Stat. 1321 (Apr. 26, 1996).

the payment of any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case." 28 U.S.C. § 1915(e)(2).

On March 21, 2011, Chief Magistrate Judge Thomas M. Blewitt, to whom the case was assigned, issued a Report and Recommendation that the Motions for IFP be granted and the Complaint be dismissed pursuant to 28 U.S.C. § 1915(e)(2) for failure to state a claim. (Doc. No. 10.) On March 30, 2011, Plaintiff filed objections to the Report and Recommendation. (Doc. No. 12.) The Court must now "make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made. [The Court] may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1).

For reasons that follow, the Court will approve and adopt the Report and Recommendation (Doc. No. 10), grant Plaintiffs Motions to Proceed IFP (Doc. No. 2, 7), and dismiss the Complaint with prejudice (Doc. No. 1).

## II. FACTUAL BACKGROUND

In October 2009, Plaintiff was being supervised while on Pennsylvania state parole by parole agent Frank Coslett.[2] (Doc. No. 1 ¶ 11.) During his supervision, Plaintiff "perform[ed] work on a home belonging to his father at 90 Market street, Pittston Pa" (the "residence"). (Id. ¶ 12.) On or about October 2009, when Plaintiff was at his father's residence, agent Coslett went to the residence and suggested that Plaintiff submit for approval a "home plan," which would allow Plaintiff to live at his father's home while on supervised release. (Id. ¶ 13.) Plaintiff agreed to submit a home plan and allowed Coslett to enter the residence for the purpose of

---

[2] Coslett is not a Defendant in this case.

"conducting a home plan approval." (Id. ¶ 14.)

Once inside, Coslett began his inspection. (Id. ¶ 15.) Plaintiff showed Coslett newly laid kitchen tile, explaining that he and his cousin Francis Lombardo had laid the tile the previous evening and that Lombardo was now sleeping on the couch in the living room. (Id.) Upon finishing his inspection of the first floor, Coslett began an inspection of the second floor. (Id. ¶ 16.) There, he discovered checks that he suspected were evidence of a crime and confiscated them for further investigation. (Id.)

With the checks in his possession, Coslett left the residence through the backdoor onto an attached deck. (Id. ¶ 17.) Coslett then called the Pittston City Police Department to determine if the checks were evidence of a crime. (Id. ¶ 18.) Approximately fifteen minutes later, Defendants Tokar and Hussein, Pittston City Police Officers, arrived at the residence "in a marked patrol vehicle." (Id. ¶ 19.) Coslett told Tokar and Hussein that Plaintiffs cousin, Francis Lombardo, was inside. (Id. ¶ 21.) This fact "[s]eemingly aroused" Tokar and Hussein, who entered the residence through the backdoor in search of Lombardo. (Id. ¶¶ 22-23.) Coslett followed them inside. (Id. ¶ 24.)

Plaintiff entered shortly after Coslett and saw Tokar and Hussein with their weapons drawn, descending the stairs into the basement. (Id. ¶ 25.) "Through shock and fear" Plaintiff attempted to go up the steps to the second floor to get his cell phone. (Id. ¶ 26.) However, he was "accosted" by Tokar, Hussein, and Coslett. (Id.) Thereafter, as Plaintiff alleges in his Complaint:

> Agent Coslett ordered the plaintiff to strip naked in front of defendants Tokar and Hussein, even though the plaintiff asked them not to be present.

> After strip searching the plaintiff, he was handcuffed behind his back by agent Coslett while defendnats [sic] Tokar and Hussein, along with agent Coslett, began to search the bathroom in which the plaintiff was stripped naked in.
>
> After completely searching the bathroom, the plaintiff was led downstairs by defendnat [sic] Hussein and ordered to sit in a living room chair still handcuffed.

(Id, ¶¶ 27-29.) After conducting a search of the first and second floor of the residence, Coslett removed the handcuffs he had placed on Plaintiff, and Tokar and Hussein exited the residence through the backdoor. (Id. ¶¶ 30-32.)

With respect to the culpability of the Pittston City Police Department, Plaintiff asserts that:

> Pittston city police has set out for the last several years on a course of conduct to harass, cause alarm, annoy, and create fright and fear, enough to cause significant damages to the plaintiff, Marc Keating, in retaliation to the fact that his father was Mayor for the [C]ity of Pittston.

(Id. ¶ 9.) Plaintiff further avers in the Complaint that the incident was the most recent example of this retaliation and:

> The policies and customs of Pittston city police were not to supervise or discipline their officers, or to investigate whether their officers engaged in wrongful conduct.
>
> There is no file maintained by Pittston city police, that the plaintiff knows of, which documents lawsuits or improper police conduct.
>
> Pittston city police does not have a complaint procedure for citizens to complain about the conduct of its police officers. There is no form for the complaint, there is no review procedure to determine if a complaint is or is not founded. And there are no rules of any kind which are followed with regards to complaints against Pittston city police officers.
>
> Pittston city police has permitted the structural impediment and other improper and inadequate supervision and control of police officers within that

> department.
>
> Further, no person within the Pittston city police department, including its Chief or supervisor, has exercised control over the police department in any meaningful fashion.
>
> And, there has been no discipline metted [sic] out to Tokar or Hussein for the wrongful conduct which underlies this complaint.

(Id. ¶¶ 10, 39-43.)

The Complaint contains five counts. In Count One, Plaintiff asserts a claim of illegal entry against Defendants Tokar and Hussein pursuant to 42 U.S.C. § 1983. (Doc. No. I ¶¶ 33-35.) In Count Two, he asserts a Section 1983 claim of illegal seizure also against Defendants Tokar and Hussein. (Id. ¶¶ 36-37.) In Count Three, it appears that Plaintiff is asserting a Section 1983 municipal liability claim against Defendant City of Pittston pursuant to Monell v. New York Department of Social Services, 436 U.S. 658 (1978) for failure to train named Defendants.' (Id. ¶¶ 38-43.) In Count Four, Plaintiff alleges that Defendants engaged in a conspiracy in violation of 42 U.S.C. § 1985(3). (Id. ¶¶ 44-46.) In Count Five, Plaintiff asserts a "trespass and action for neglect to prevent" pursuant to 42 U.S.C. § 1986. (Id. ¶¶ 47-49.)

## III. DISCUSSION

Plaintiff concedes that his claims set forth in Counts Four and Five under 42 U.S.C. § 1985(3) and 42 U.S.C. § 1986 "are not arguable and should be dismissed." (Doc. No. 12 at 1.) He objects to Judge Blewitt's Report and Recommendation to the extent that it recommends that

---

[3] "[I]t is well accepted that courts should liberally construe the filings of pro se litigants." Snyder v. Bazargani, No. 10-3765, 2010 WL 4872197, at *2 (3d Cir. Dec. 1, 2010) (citing Haines v. Kerner, 404 U.S. 519, 520 (1972)). The Court liberally construes the Complaint here.

Counts One, Two, Three, and Five[4] should be dismissed with prejudice and that Plaintiff should not be granted leave to amend the Complaint pursuant to the futility exception. (Id.) The Court will now "make a de novo determination of those portions of the report . . . to which objection is made." 28 U.S.C. § 636(b)(1). For reasons that follow, the Court agrees with the conclusions contained in the portions of Judge Blewitt's Report and Recommendation to which Plaintiff objects. Thus, the Court will approve and adopt the Report and Recommendation.

### A. Plaintiffs First Objection: Illegal Seizure (Count Two)

Plaintiff asserts that he has stated a claim for illegal seizure under the Fourth Amendment. He asserts that he was "seized" at the moment Tokar, Hussein, and Coslett accosted him because it rendered him unable to "freely move about his own house." (Doc. No. 12 at 5.)

To state a claim for false arrest under the Fourth Amendment, Plaintiff must allege that he was arrested without probable cause. Pollock v. The City of Philadelphia, No. 10-2041, 2010 WL 5078003, at *3 (3d Cir. Dec. 14, 2010). A Fourth Amendment "arrest" may occur even if a plaintiff was not formally arrested, so long as the plaintiff was "seized" within the meaning of the Fourth Amendment. See. e.g., Torres v. McLaughlin, 163 F.3d 169, 174 (3d Cir. 1998) (citing Terry v. Ohio, 392 U.S. 1, 19 (1968)). "A person is seized for Fourth Amendment purposes only if he is detained by means intentionally applied to terminate his freedom of movement." Bern v. County of Allegheny, 219 F.3d 261, 269 (3d Cir. 2000). Further, to establish section 1983 liability, a plaintiff must allege that a defendant was personally involved in the constitutional

---

[4] Although Plaintiff concedes Count Five as stated should be dismissed because it is not arguable under 42 U.S.C. § 1986, he asserts that he should be granted leave to amend Count Five to add a state law tort claim, as discussed *infra.*

violation. Innis v. Wilson, 334 Fed. App'x 454, 457 (3d Cir. 2009); see also Ashcroft v. Iqbal, 129 S. Ct. 1937, 1948 (2009) ("[E]ach Government official, his or her title notwithstanding, is only liable for his or her own misconduct.").

Here, Plaintiff alleges he was handcuffed and strip searched by Coslett. Although this act by Coslett may have been intentional in order to terminate the freedom of movement of Plaintiff, it was not done by either Defendant Tokar or Defendant Hussein. Section 1983 liability may only be based on a defendant's personal involvement in the conduct which amounts to a constitutional violation. Innis v. Wilson, 334 Fed. App'x at 457. Plaintiff has not alleged that Tokar and Hussein were personally involved in his arrest. Therefore, he has failed to establish that either Tokar or Hussein arrested him within the meaning of the Fourth Amendment, a prerequisite to Section 1983 liability in the context of this case. Accordingly, Plaintiff has failed to state a claim that amounts to an illegal seizure in violation of the Fourth Amendment. Thus, the Court approves and adopts the finding that Count Two should be dismissed for failure to state a claim.

**B.     Plaintiffs Second Objection: Illegal Entry (Count One)**

Plaintiff acknowledges that his failure to allege that he "resided" in the home that was searched "surely flawed the [] complaint," with respect to his claim for illegal entry. (Doc. No. 12 at 8.) He therefore agrees with Judge Blewitt's conclusion that the Complaint fails to state a claim for illegal entry because it fails to allege that Plaintiff had a legitimate expectation of privacy in the invaded place—his father's residence. Plaintiff requests, however, that he be granted leave to amend the Complaint to allege that he "had permission from his father to reside" there. This amendment would be futile for two reasons. See Grayson v. Mayview State Hosp., 293 F.3d 103, 108 (3d Cir. 2002) (a court is required to allow a pro se plaintiff leave to amend

7

before dismissing the complaint for failure to state a claim unless an amendment would be futile).

First, the addition of the factual averment that Plaintiff had permission to reside at his father's home would not overcome the insufficiency of facts to support the Fourth Amendment constitutional claim relating to illegal entry. Plaintiff still fails to allege that he actually resided in his father's home. The addition of a factual averment that he only had permission to reside in the home does not establish that Plaintiff actually resided there. Consequently, he had no reasonable expectation of privacy in the home and no standing to raise a Fourth Amendment claim.

Further, even if Plaintiff were to amend the Complaint to state that he actually resided in his father's home, this allegation would be inconsistent with the factual allegations already contained in the Complaint. The Complaint alleges that, while on supervised release, Plaintiff "perform[ed] work on a home belonging to his father at 90 Market street, Pittston Pa." (Doc. No. 1 ¶ 12.) Further, it alleges that the reason why Plaintiff allowed Coslett to enter the home on the date of the incident was to conduct a home plan approval. (Id. ¶ 14.) A home plan approval would allow Plaintiff to live at his father's residence while on supervised release. The fact that Plaintiff had not been approved to reside there, but was actively seeking approval, belies any claim that he resided there. The allegations show at best that Plaintiff wished to reside there. Therefore, an amendment alleging that Plaintiff actually resided at the home would be inconsistent and futile.

C.  Plaintiffs Third Objection: Monell Claim (Count Three)

Plaintiff objects to the finding of the Report and Recommendation that he has failed to state a claim for municipal liability. He asserts that he has stated a claim because he alleges that:

> Pittston city does not have any kind of policy providing guidance to its officers about how to conduct a legal search, initiate a proper Terry stop, or obtain a warrant or how to carry out a warrantless entry that may or may not be justified. If a citizen were to make a complaint about a Pittston city police officer, there is not written procedure in place.

(Doc. No. 12 at 13.)

A Section 1983 claim cannot be premised on a theory of *respondeat superior.* To state a claim against a municipality or corporate entity, a plaintiff must do more than allege the municipality or corporation employed a tortfeasor. Bd. of County Comm'rs v. Brown, 520 U.S. 397, 403 (1997) (citing Monell, 436 U.S. at 694). A plaintiff must allege that a municipal or corporate policy or custom caused his injury. Id. Further, to survive a motion to dismiss, a plaintiff must allege that the policy or custom was the "moving force" behind the constitutional violation. Gravson v. Mavview State Hosv., 293 F.3d 103, 107 (3d Cir.2002) (citing Bd. of Cnty. Comm'rs of Bryan Cnty.. Okla. v. Brown, 520 U.S. 397, 404 (1997)).

> [W]here municipal liability is predicated upon a "failure to train," the failure must constitute "deliberate indifference" to the plaintiffs constitutional rights. Woloszyn v. Cnty. of Lawrence, 396 F.3d 314, 324 (3d Cir.2005) (citing City of Canton v. Harris, 489 U.S. 378, 388, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989)). Failure to train "can ordinarily be considered deliberate indifference only where the failure has caused a pattern of violations." Berg v. Cnty. of Allegheny, 219 F.3d 261, 276 (3d Cir.2000) (citing Bryan Cnty. v. Brown, 520 U.S. 397, 408 (1997)).

Bolick v. Pennsylvania, No. 10-1461, 2011 WL 941394, at *7 (E.D. Pa. Mar. 16, 2011).

9

In the instant case, Plaintiff has failed to allege facts that support a claim of municipal liability. The factual allegations contained in the Complaint do not establish that the failure of Pittston City to train police in the manner suggested constituted "deliberate indifference." Plaintiff does not allege facts which show a pattern of violations and does not allege that the policy or custom of Pittston City was the "moving force" behind the violation of his Fourth Amendment rights. Therefore, Plaintiff has failed to state a claim for municipal liability. Accordingly, the Court will approve and adopt the finding that Count Three should be dismissed for failure to state a claim.

### D. Plaintiff's Fourth Objection: Trespass and Action for Neglect to Prevent (Count V)

Plaintiff concedes that his "trespass and action for neglect to prevent" is not arguable pursuant to 42 U.S.C. § 1986, but seeks to amend the Complaint to add a claim of trespass under Pennsylvania law. Such an amendment would be futile.

"The Political Subdivision Tort Claims Act immunizes municipalities from liability for all state law tort claims." Pagliaccetti v. City of Phildelphia, No. 09-1106, 2010 WL 3222153, at *8 (E.D. Pa. Aug. 13, 2010) (citing 42 Pa. C.S. § 8541, et seq.). The Act provides:

> Except as otherwise provided in this subchapter, no local agency shall be liable for any damages on account of any injury to a person or property caused by any act of the local agency or an employee thereof or any other person.

While the Act provides eight specific exceptions to the grant of immunity, none are applicable

here.' See 42 Pa. C.S. § 8542(b).

Where a plaintiff sues a municipal officer in his official capacity, "the real party in interest . . . is the governmental entity and not the named official." Hafer v. Melo, 502 U.S. 21, 25 (1991). Therefore, a suit against a municipal officer in his official capacity is treated a suit against the municipality itself. In such cases, the Act immunizes the municipal officer from suit.

Here, Plaintiff sues Defendants Tokar and Hussein in their official capacity. (Doc. No. 1 ¶¶ 6-7.) If the Court granted Plaintiff leave to amend the Complaint to add a claim for trespass against Defendants Tokar and Hussein in their official capacity, this claim would be barred by the Political Subdivision Tort Claims Act. Thus, the Court will not grant Plaintiff leave to amend the Complaint because an amendment would be futile.

IV. CONCLUSION

For the foregoing reasons, the Court will approve and adopt the Report and Recommendation of Magistrate Judge Thomas M. Blewitt (Doc. No. 10), grant Plaintiffs Motions to Proceed IFP (Doc. No. 2, 7), and dismiss the Complaint with prejudice (Doc. No. 1).

An appropriate Order follows.

---

[5] The eight exceptions are: (1) vehicle liability; (2) care, custody and control of personal property; (3) real property; (4) trees, traffic controls and street lighting; (5) utility service facilities; (6) streets; (7) sidewalks; and (8) care, custody and control of animals. See 42 Pa. C.S. § 8542(b).

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

MARC KEATING,

      Plaintiff,                            CIVIL ACTION

      v.                                     NO. 11-411

PITTSTON CITY, et. al.,

      Defendants.

## ORDER

**AND NOW,** this 14th day of April 2011, upon consideration of the Complaint (Doc. No. 1), Plaintiff Marc Keating's Motions for Leave to Proceed in *Forma Pauperis* (Doc. Nos. 2, 7), the Report and Recommendation of United States Magistrate Judge Thomas M. Blewitt (Doc. No. 10), and Plaintiffs Objections to the Report and Recommendations (Doc. No. 12), and for the reasons provided in this Court's Opinion filed this date, it is **ORDERED** that:

1. Plaintiffs Motions for Leave to Proceed in *Forma Pauperis* (Doc. Nos. 2, 7) are **GRANTED** and the Complaint shall be filed of record by the Clerk of Court.

2. The Report and Recommendation of Magistrate Judge Blewitt (Doc. No. 10) is **APPROVED AND ADOPTED.**

3. The Complaint (Doc. No. 1) is **DISMISSED** WITH **PREJUDICE.**

4. All outstanding motions are **DENIED** as moot.

5. The Clerk of Court shall **CLOSE** this case.

                                          BY THE COURT:

                                          */s/ Joel Slomsky*
                                          JOEL H. SLOMSKY, J.